1

2              UNITED STATES DISTRICT COURT

3            NORTHERN DISTRICT OF CALIFORNIA

4               SAN FRANCISCO DIVISION

5

6   FL DISTRIBUCIÓN S.A. DE C.V.,                Case No.  23-mc-80177-PHK

7              Applicant,

8        v.                                      **ORDER GRANTING *EX PARTE***
                                                 **APPLICATION PURSUANT TO 28**
9   SONY INTERACTIVE                             **U.S.C. § 1782 FOR AN ORDER**
    ENTERTAINMENT AMERICA                        **DIRECTING DISCOVERY IN AID OF**
10  TRADING LLC,                                 **FOREIGN PROCEEDINGS**

11         Proposed Subpoenaed Party.            Re: Dkt. No. 3

12

13                     **INTRODUCTION**

14        This matter is before the Court on the *ex parte* application of FL Distribución S.A. de C.V.

15  ("FL") requesting an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for

16  discovery on Sony Interactive Entertainment America Trading LLC ("Sony").[1]  [Dkt. 3].  Sony

17  filed a response to FL's application, stating that it "takes no position on the issuance of the

18  subpoena, but it reserves all rights and objections with respect to the subpoena."  [Dkt. 22 at 2].

19  FL and Sony have both consented to Magistrate Judge jurisdiction in this matter.  [Dkts. 12-13].

20  The Court determines that this matter is appropriate for resolution without oral argument.  *See*

21  Civil L.R. 7-1(b).  Having carefully reviewed FL's application and all papers submitted in support

22  thereof, as well as Sony's response to the application, the Court **GRANTS** the *ex parte* application

23

24  ───────────────
    [1]  FL initially sought authorization to serve an identical subpoena upon Sony Computer
25  Entertainment of America Trading Latin America LLC.  *See* Dkt. 3 at 1 ("In aid of the Canada
    proceeding, FL files this *ex parte* application for discovery pursuant to 28 U.S.C. § 1782 seeking
26  issuance of two subpoenas to Sony Interactive Entertainment America Trading LLC and Sony
    Computer Entertainment of America Trading Latin America LLC, both known as Sony
27  PlayStation.").  However, FL voluntarily dismissed its petition as to Sony Computer Entertainment
    of America Trading Latin America LLC ("Sony Latin America"), the second of the two originally
28  proposed subpoenaed parties, on August 14, 2023.  *See* Dkts. 14, 18.  Accordingly, the Court does
    not by this Order authorize issuance of any subpoena to Sony Latin America.

1  on the terms and for the reasons set forth below.

2  **BACKGROUND**

3  **A.    The Ontario Proceeding**

4       This matter arises from a lawsuit pending in a Canadian court, in which FL seeks relief

5  from certain respondents for alleged wrongful acts relating to businesses involved in the

6  distribution of Sony PlayStation products in Latin America.  The factual background herein is

7  based on FL's averments in its petition and the excerpts of the records relating to the Ontario

8  Proceeding provided by FL.  Specifically, FL seeks to serve a third-party subpoena on Sony for

9  documents and electronically stored information ("ESI") for use in connection with a shareholder

10  oppression lawsuit that is currently pending in the Ontario Superior Court of Justice in Ontario,

11  Canada ("Ontario Proceeding") against a group of respondents related to a company called

12  Solutions 2 Go Inc. ("S2G").  *See* Dkt. 3 at 1-2; Dkt. 3-1 at 17-28; Dkt. 3-2 at 2-7 ¶¶ 2-19.

13       S2G is the majority (90%) shareholder of an entity called Solutions 2 Go LATAM, Inc.

14  ("S2G LATAM").  [Dkt. 3-2 at 3-4 ¶¶ 7-8, 10].  FL is a minority (10%) shareholder in S2G

15  LATAM.  *Id.*  S2G LATAM is licensed by Sony to distribute Sony PlayStation products across

16  Latin America.  *Id.*  In 2022, FL and its managing director, Luis Alberto San Martín Ríos y Valles,

17  filed an originating application with the Ontario Superior Court of Justice, naming S2G and seven

18  related individuals and entities as respondents.  *Id.* at 2 ¶ 2, 7 ¶ 19.  In the Ontario litigation, FL

19  alleges that S2G engaged in a multiyear effort to wrongfully deprive FL of its rights to financial

20  and accounting information regarding S2G LATAM's receipt of certain financial incentives

21  (identified as "credit notes") from Sony.  *Id.* at 4-7 ¶¶ 11-19.  FL alleges that S2G did so in a

22  deliberate effort to, first, wrongfully reduce FL's ownership stake in three subsidiary companies

23  which FL and S2G collectively own—S2G Mexico LLC ("S2G Mexico"), S2G Mexico S.A. de

24  C.V. ("S2G Mexico S.A."), and Solutions 2 Go Do Brasil Participações Ltda. ("S2G Brazil")—

25  and, second, to strongarm FL into selling its ownership stake in those three subsidiary companies

26  to S2G at a valuation significantly lower than their true market value.  *Id.*

27       In the Ontario Proceeding, FL seeks remedies for oppression under the Ontario Business

28  Corporations Act, including: (1) the appointment of an accounting firm to perform an audit of S2G

United States District Court
Northern District of California

2

1    LATAM and its three subsidiaries; (2) "to derive the fair market value of FL's securities in those

2    companies based on that audited information;" (3) to value and report, on the basis of the audit, all

3    amounts owing to FL arising from the business of those companies (defined as "Accounting and

4    Compensation Amounts"); (4) "requiring the Respondents or some of them to purchase FL's

5    securities in those companies at their fair market value;" and (5) "requiring the Respondents or

6    some of them to pay all Accounting and Compensation Amounts[.]" *Id.* at 126-27 ¶ 335.

7         After commencing its shareholder oppression lawsuit in Canada, FL attempted to obtain

8    records of the Sony credit notes issued to S2G LATAM directly from S2G. *Id.* at 8 ¶ 26. S2G

9    apparently refused to comply with FL's request. *Id.* In June 2023, FL's counsel notified the

10   Ontario Superior Court of Justice of FL's intent to file a § 1782 application in the United States to

11   obtain documentary evidence from Sony for use in the Ontario Proceeding. *Id.* at 11-12 ¶ 41.

12   After obtaining the Canadian court's written authorization to do so (and the Ontario respondents'

13   counsel's consent), FL filed the instant *ex parte* application with this Court. *Id.*

14        **B.    The § 1782 Application**

15        FL filed its § 1782 application on June 29, 2023. [Dkt. 3]. In its supporting memorandum,

16   FL asks the Court for an order authorizing service of a subpoena for certain documents and ESI

17   materials relating to Sony's business dealings with, and communications regarding, S2G LATAM,

18   S2G Mexico S.A., S2G Mexico, and S2G Brazil. [Dkt. 3-1 at 5-15]. FL provided a copy of the

19   proposed subpoena with the *ex parte* application. *Id.* at 17-28. The proposed subpoena requests

20   that Sony (identified as "Sony PlayStation") produce the following:

21        1.   All documents and communications relating to any type of financial incentives or

22             financial support Sony PlayStation provided to S2G LATAM, S2G Mexico S.A., S2G

23             Mexico, and/or S2G Brazil, from 2015 to present, including all records of Sony

24             PlayStation's "credit notes" or "vendor credits" issued to S2G LATAM, categorized by

25             date, country, purpose, and retail destination.

26        2.   All documents and communications reflecting any budgets, guaranteed margins, and/or

27             expense maximums/caps that Sony PlayStation prepared or approved for S2G LATAM,

28             S2G Mexico, or their affiliates, categorized by period, expense, and country.

United States District Court
Northern District of California

3. All documents and communications reflecting how Sony PlayStation's financial support to S2G LATAM was to be allocated among each of S2G LATAM' s local companies/subsidiaries across Latin America, including, but not limited to: (a) any description of the financial incentives or support each company would receive from Sony PlayStation; (b) the specific local retailer(s) to whom the financial aid was to be passed on, in each Latin America country, by each local company.

4. All documents and communications reflecting how Sony PlayStation's financial support to S2G's business in Latin America, including its affiliates and subsidiaries, was to be allocated among S2G Mexico, S2G Mexico S.A., and S2G Brazil.

5. All written agreements between Sony PlayStation and S2G.

6. All written agreements between Sony PlayStation and S2G LATAM.

7. All written agreements between Sony PlayStation and S2G Mexico.

8. All written agreements between Sony PlayStation and S2G Mexico S.A.

9. All communications between Sony PlayStation and S2G relating to (a) S2G LATAM; (b) S2G Mexico; (c) S2G Mexico S.A; (d) S2G Brazil.

10. All documents and communications relating to any inventory discrepancy or credit notes promised and not offered to retailers by S2G LATAM or S2G Mexico.

11. All documents and communications relating to any financial or accounting reconciliation concerning Sony PlayStation's guaranteed margin for S2G Mexico, including, but not limited to, (a) the calculations that supported the reconciliation, and (b) all the amounts that Sony PlayStation paid to S2G Mexico (or intended to pay S2G Mexico) either in "credit notes," "vendor notes," or cash.

12. All documents and communications regarding any exchange rate losses generated in Mexico relating to S2G LATAM, S2G Mexico or S2G Mexico S.A.

13. All documents and communications relating to any cancelled "credit notes" or "vendor notes" regarding S2G LATAM, S2G Mexico, and S2G Brazil, and the reason(s) for the cancellations.

14. All invoices issued to S2G LATAM for sale of products, including unit costs and rebates.

15. All documents and communications between (a) Sony PlayStation and S2G LATAM, or

(b) Sony Play Station and S2G relating to S2G LATAM's purchases and sales, marketing

credit, or marketing or other support.

16. All documents and communications relating to S2G LATAM's purchase orders to Sony

PlayStation.

17. All communications relating to S2G Mexico.

18. All communications relating to S2G Brazil.

19. All documents and communications relating to any amounts owed by S2G LATAM, S2G

Mexico, or S2G Brazil to Sony Play Station.

*Id.* at 26-28.

On July 11, 2023, this Court issued an Order instructing FL to serve a copy of its application on Sony and setting a deadline for the Parties to consent or decline Magistrate Judge jurisdiction in this matter.  [Dkt. 5].  On August 4, 2023, FL filed a status report with the Court, requesting an extension of the consent deadline to allow the Parties to continue with conferral efforts in their attempt to reach an agreement regarding the scope of the proposed subpoena without court intervention.  [Dkt. 8].  The Court granted FL's request.  [Dkt. 9].  On August 11, 2023, FL and the Sony entities consented to Magistrate Judge jurisdiction.  [Dkts. 12-13].  A few days later, FL requested additional time to allow the Parties to meet and confer regarding the scope of the proposed subpoena and submit a status report on September 1, 2023, which the Court also granted.  *See* Dkts. 14-15, 17.  The Parties continued to meet and confer, and continued to submit status reports to the Court.  *See* Dkts. 18-20.

On September 22, 2023, FL filed a status report with the Court, advising that the Parties' respective counsel were unable to reach a compromise regarding the scope of the proposed subpoena despite their multiple efforts at conferral.  [Dkt. 21].  Specifically, FL reported that Sony's counsel "refuse[d] to provide any concrete position regarding the subpoena or raise any issue that Sony [] could have with the scope of the subpoena, only stating that the subpoena [was] 'too broad' (without ever explaining which requests [were] 'too broad' and why)."  *Id.* at 3.  FL requested that the Court enter an order granting its *ex parte* application and asked that Sony be

given ten days to challenge the subpoena after its issuance.  *Id.* at 4.

Sony filed a response to FL's status report later that same day, advising that it "takes no position on the issuance of the subpoena, but it reserves all rights and objections with respect to the subpoena." [Dkt. 22 at 2].  Sony stated that its counsel "had productive discussions" with FL's counsel regarding the scope of the subpoena, but asserted that FL's counsel "derailed those discussions, which caused an impasse." *Id.* at 3.  Sony asked that it be given thirty days to challenge the subpoena, assuming the Court grants FL's § 1782 application.  *Id.*

## LEGAL STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

"Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citing 28 U.S.C. § 1782(a)).

Even where the statutory requirements are met, a district court retains discretion to

1    determine what discovery, if any, should be permitted.  *Intel*, 542 U.S. at 264; *see Four Pillars*

2    *Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress gave the

3    federal district courts broad discretion to determine whether, and to what extent, to honor a request

4    for assistance under 28 U.S.C. § 1782.").  In exercising its discretion, a district court should

5    consider the following factors: (1) whether the "person from whom discovery is sought is a

6    participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the

7    proceedings underway abroad, and the receptivity of the foreign government or the court or

8    agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an

9    attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

10   the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542

11   U.S. at 264-65.

12        A district court's discretion is to be exercised in view of § 1782's twin aims: "providing

13   efficient assistance to participants in international litigation and encouraging foreign countries by

14   example to provide similar assistance to our courts."  *Id.* at 252.  There is no requirement that the

15   party seeking discovery establish that the information sought would be discoverable under the

16   governing law in the foreign proceeding or that United States law would allow discovery in an

17   analogous domestic proceeding.  *Id.* at 247, 261-63.  "Section 1782 is a provision for assistance to

18   tribunals abroad.  It does not direct United States courts to engage in comparative analysis to

19   determine whether analogous proceedings exist here."  *Id.* at 263.

20   **DISCUSSION**

21        As discussed in detail, FL seeks leave to serve a subpoena on Sony for documents and ESI

22   relating to FL's minority shareholder oppression lawsuit against S2G currently pending in a

23   Canadian court in Ontario, Canada.  [Dkt. 3].  The Court first considers whether it has the

24   authority to issue the subpoena and then determines whether discretionary factors favor its

25   issuance.

26       **A.**    **The Court has Authority to Grant the Requested Relief**

27        As a threshold matter, this Court has authority to hear and decide the § 1782 application

28   because FL and Sony have both consented to Magistrate Judge jurisdiction.  *See* 28 U.S.C.

United States District Court
Northern District of California

§ 636(c); *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022); *Williams v. King*, 875 F.3d 500, 500 (9th Cir. 2017).

The Court finds that FL's application satisfies each of the threshold statutory requirements of § 1782. The statute first requires that the person from whom discovery is sought "resides or is found" in the district of the district court where the application is made. 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. "A business is 'found' where it is incorporated or headquartered." *In re Al-Baldawi*, No. 5:22-mc-80329-EJD, 2023 WL 3603731, at *2 (N.D. Cal. May 23, 2023) (quoting *Illumina Cambridge, Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO (TSH), 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020)). Here, the Sony entity that is the target of the proposed subpoena is headquartered in San Mateo, California, which is located within the Northern District of California. *See* bizfile Online, Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/search/business (search for "Sony Interactive Entertainment America Trading LLC" or file no. 201102110161) (last visited on September 28, 2023) (Sony's "principal address" in San Mateo); Sony Interactive Entertainment, Our Company, https://sonyinteractive.com/en/our-company/ (last visited on September 28, 2023) ("Headquartered in San Mateo, California"); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Minor v. FedEx Office & Print Servs.*, 78 F. Supp. 3d 1021, 1028 (N.D. Cal. 2015) (taking judicial notice of record of administrative agencies and publicly accessible websites). Accordingly, the first statutory factor is satisfied. *Cf. Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) ("Google is headquartered in this District and is 'found' here for purposes of § 1782.").

The statute next requires that the discovery sought be "for use in a proceeding before a foreign tribunal." 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. Here, FL seeks documents and ESI for use in a shareholder oppression lawsuit, *FL Distribución S.A. de C.V. v. Chevalier*, Court File No. CV-22-00680881-0000, that is currently pending before the Ontario Superior Court of Justice in Ontario, Canada. *See* Dkt. 3-2 at 14-127. Thus, the second statutory factor is

1   satisfied.  *In re Adams*, No. 21-mc-80011-VKD, 2021 WL 275478, at *3 (N.D. Cal. Jan. 27, 2021)

2   (finding the second statutory requirement met where the applicant sought discovery for use in two

3   civil actions pending before the Ontario Superior Court of Justice in Canada).

4         Section 1782 finally requires that the discovery request be made by a foreign tribunal or

5   interested person.  28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925.  As one of the plaintiffs in

6   the Canadian lawsuit, FL qualifies as an "interested person" for purposes of § 1782.  Thus, the

7   third statutory factor is satisfied.  *See Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108,

8   1110-11 (9th Cir. 2015) (A party to foreign proceedings "has a 'reasonable interest' in obtaining

9   judicial assistance and, therefore, may apply for judicial assistance pursuant to § 1782."); *In re W.*

10  *Face Capital Inc.*, No. 19-mc-80260-LB, 2019 WL 5617891, at *2 (N.D. Cal. Oct. 31, 2019)

11  ("West Face qualifies an 'interested person' [under § 1782] because it is a party to the Canadian

12  lawsuit."); *In re Futurecorp Int'l Pty Ltd.*, No. C12-80267 MISC CRB (LB), 2012 WL 5818288,

13  at *2 (N.D. Cal. Nov. 15, 2012) ("Futurecorp is the plaintiff in the Australian proceeding and thus

14  is an 'interested person'").

15      **B.**    **Discretionary Factors Weigh in Favor of Granting FL's Application**

16        The Court finds that each of the four discretionary *Intel* factors discussed above supports

17  the granting of the instant *ex parte* application.

18        The first discretionary factor considers whether the "person from whom discovery is

19  sought is a participant in the foreign proceeding."  *Intel*, 542 U.S. at 247.  "[W]hen the person

20  from whom discovery is sought is a participant in the foreign proceeding[,] . . . the need for

21  § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a

22  nonparticipant in the matter arising abroad."  *Id.* at 264.  This is because "[a] foreign tribunal has

23  jurisdiction over those appearing before it and can itself order them to produce evidence."  *Id.*  By

24  contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's

25  jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable

26  absent § 1782(a) aid."  *Id.*  "[T]he key issue is whether the material is obtainable through the

27  foreign proceeding."  *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 910 (N.D. Cal. 2022)

28  (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D.

United States District Court
Northern District of California

1    Cal. Mar. 14, 2016)).  "Consequently, the first discretionary factor 'favors discovery against

2    nonparticipants in foreign proceedings.'"  *Id.* (quoting *In re Anahara*, No. 22-mc-80063, 2022 WL

3    783896, at *2 (N.D. Cal. Mar. 15, 2022)).

4            Here, Sony is not a party to the proceedings in Canada.  FL represents that it would be

5    unable to obtain the materials sought from Sony without a subpoena from this Court.  [Dkt. 3-1 at

6    12].  Accordingly, this factor weighs in favor of granting FL's application.  *See In re Ex Parte*

7    *Application of Digital Shape Techs., Inc.*, No. 16-mc-80150-JSC, 2016 WL 3913670, at *3 (N.D.

8    Cal. July 20, 2016) ("Glassdoor is not a party to the Canadian Action, and therefore discovery

9    regarding the March 7, 2013 statement and its audience is unattainable absent Section 1782(a)

10    relief."); *see also In re 2770095 Ontario, Inc.*, No. 21-mc-80301-SK, 2022 WL 183443, at *2

11    (N.D. Cal. Jan. 20, 2022) (finding the first discretionary factor to weigh in favor of granting the

12    § 1782 application where the proposed subpoenaed party was not a participant in the foreign

13    proceedings in Canada).

14            The second discretionary factor asks the Court to consider "the nature of the foreign

15    tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

16    government or the court or agency abroad to U.S. federal court judicial assistance."  *Intel*, 542

17    U.S. at 264.  This factor "focuses on whether the foreign tribunal is willing to consider the

18    information sought."  *In re Will Co.*, No. 21-mc-80211-JCS, 2021 WL 5322653, at *3 (N.D. Cal.

19    Nov. 16, 2021) (quoting *Varian Med. Sys*, 2016 WL 1161568, at *4).  "Where there is no evidence

20    suggesting that foreign courts would be unreceptive to the requested discovery, the second

21    discretionary factor weighs in favor of the application."  *Id.* (citing *In re Med. Corp. H&S*, No. 19-

22    mc-80107-SVK, 2019 WL 2299953, at *3 (N.D. Cal. May 30, 2019)).

23            Here, FL states that it sought and obtained permission from the Ontario Superior Court of

24    Justice "to proceed with this 1782 Application and use the materials obtained from Sony

25    PlayStation in its submissions in the [Ontario] Proceeding."  [Dkt. 3-1 at 13].  FL asserts that the

26    Canadian court is "receptive to any financial, accounting and business materials uncovered

27    through FL's 1782 Application."  *Id.* at 12.  Further, as noted, the Canadian court granted leave for

28    (and counsel for the Ontario respondents apparently consented to) FL being allowed to submit

United States District Court
Northern District of California

United States District Court
Northern District of California

1    supplementary reply materials received from Sony as a result of the § 1782 application.  [Dkt. 3-2

2    at 11-12 ¶ 41].  The Court finds nothing within the record suggesting that the Canadian court

3    would be unreceptive to the discovery sought from Sony.

4          Indeed, Canadian courts have indicated that they "generally will be reluctant to prevent

5    someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian

6    proceeding will be determined by the Canadian courts."  *Al-Baldawi*, 2023 WL 3603731, at *3

7    (quoting *Vitapharm Canada Ltd. v. F. Hoffman-La Roche Ltd.*, [2001] O.J. No. 237, para. 45

8    (Can. Ont. S.C.J.) (QL)).  Accordingly, the Court concludes that the second discretionary factor

9    weighs in favor of granting the instant *ex parte* application.  *See Adams*, 2021 WL 275478, at *4

10   (finding the second discretionary factor to weigh in favor of authorizing discovery where applicant

11   represented that "Ontario courts generally welcome the assistance of U.S. courts" and where the

12   record contained no evidence suggesting otherwise); *see also Anahara*, 2022 WL 783896, at *3

13   ("Anahara's Japanese attorney states that Japanese courts are receptive to this type of discovery

14   obtained through the United States judicial system.  There is no evidence in the record to the

15   contrary.  The second factor therefore weighs in favor of the application.") (internal citation

16   omitted).

17          The third discretionary factor requires the Court to consider whether the request "conceals

18   an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country

19   or the United States."  *Intel*, 542 U.S. at 265.  "A perception that an applicant has side-stepped

20   less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's

21   analysis."  *Alpine Partners*, 635 F. Supp. 3d at 912 (citation omitted).  "Absence of evidence of

22   attempted circumvention weighs in favor of an application."  *Anahara*, 2022 WL 783896, at *3.

23          Here, FL argues that its *ex parte* application "is not an attempt to circumvent any proof-

24   gathering restrictions but is rather an effort to collect information to assist the Canada court in

25   determining the remedies FL is entitled to obtain in the [Ontario] Proceeding."  [Dkt. 3-1 at 13].

26   FL stresses that it "obtained leave from the Canada court" before commencing this § 1782 action

27   and states that "there is no restriction in the [Ontario] Proceeding on gathering the type of

28   information and documents sought."  *Id.* at 12-13.  FL states that the information that it seeks to

obtain from Sony is "key" to proving its claims in the Canadian action and that such evidence "would be admissible in Canada." *Id.* at 14.  The Court finds nothing in the record to suggest that FL is attempting to evade Canadian discovery rules, or any policy of Canada or the United States. Accordingly, the Court finds that the third factor weighs in favor of granting FL's application. *See MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-mc-80153-MEJ, 2018 WL 368766, at *4 (N.D. Cal. Jan. 11, 2018) (finding the third discretionary factor to weigh in favor of granting the § 1782 application where there was no evidence that the applicant was attempting "to bypass proper proof-gathering policy or procedure in either Canada or the United States").

The fourth discretionary factor asks the Court to consider whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (citation omitted).  "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

"The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *Varian Med. Sys.*, 2016 WL 1161568, at *5 (citing *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)). Federal Rule of Civil Procedure 26, in particular, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Proportionality depends, in part, on "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

In its supporting memorandum, FL argues that its proposed subpoena requesting documents and ESI from Sony is narrowly tailored, in that it seeks information pertaining only to "the financial support that Sony [] provided to the select group of companies in which FL has an ownership interest, including their affiliates and subsidiaries," the "sale of Sony PlayStation products to those companies," and Sony's "budgets and sales directions to those entities." [Dkt. 3-1 at 14].  FL states that the scope of discovery sought is restricted to "cover the time-period that is strictly relevant to" the Ontario Proceeding, "which is from 2015 to present." *Id.*  Finally, FL

12

argues that Sony would not be unduly burdened by its discovery request because Sony "maintains an electronic portal where it keeps all records of its financial incentives to S2G LATAM (including credit notes)," and thus, "may easily search for and produce the records sought in FL's [proposed subpoena] at low cost and insignificant inconvenience." *Id.*

Based on FL's representations regarding the scope of its discovery request and in the absence of any opposition from Sony at this time, the Court is satisfied for purposes of authorizing the subpoena that the discovery sought from Sony is relevant to the Ontario Proceeding and proportional to the needs of the case. There is nothing in the present record leading this Court to conclude that the information sought by FL is clearly privileged or otherwise undiscoverable. The Court ordered the Parties to meet and confer for purposes of identifying specific areas of dispute with regard to the proposed subpoena. *See* Dkts. 5, 9, 18, 20. As noted, those efforts appear to have been unavailing. While the Parties' briefing suggests that Sony may be attempting to reserve some version of an objection that the scope of FL's request for documents and ESI is overly broad, the record is devoid of any specific positions of either Party on any disputes to narrow the number or scope of disputes regarding any specific document request. While this Court's ruling does not bar the Parties from filing a later discovery motion regarding the subpoena after issuance (whether in the form of a motion to compel or a motion to quash or modify the subpoena), the Court strongly advises the Parties and their counsel to fully comply with the Court's Discovery Standing Order (including particularly Sections E (regarding document production), F (regarding ESI), and H (regarding discovery disputes)) and with the Court's Guidelines for Professional Conduct (including particularly Section 9 regarding Discovery). Further, the Parties and their counsel are reminded of the mandate of Federal Rule of Civil Procedure 1 that the Rules "should be . . . employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See also* Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment ("Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends."). In the event any future motions practice should be

1    necessary regarding the subpoena, counsel shall be prepared to explain why arguments and

2    disputes, which could have been easily resolved during the meet and confers at this stage of the

3    proceedings, were not.

4         Under the current circumstances, the Court concludes that the fourth discretionary factor

5    weighs in favor of authorizing service of the subpoena upon Sony, subject to certain procedural

6    protections, described below, that the Court affords to Sony following service.

7         Accordingly, the Court finds that all four discretionary factors weigh in favor of granting

8    the instant *ex parte* application.  The fact that Sony does not oppose the relief sought by FL in its

9    application (subject to "reservation of rights" to object to the underlying subpoena) further

10    supports the exercise of discretion to grant the application.

11    **C.**    **Procedural Issues Regarding the Subpoena**

12         The Parties have raised certain procedural issues regarding the subpoena.  Under § 1782,

13    the Court has discretion to "prescribe the practice and procedure . . . for taking the testimony or

14    statement or producing the document or other thing."  28 U.S.C. § 1782(a).  The practice or

15    procedure "may be in whole or part the practice and procedure of the foreign country or the

16    international tribunal."  *Id.*  Unless otherwise ordered by the Court, "the testimony or statement

17    shall be taken, and the document or other thing produced, in accordance with the Federal Rules of

18    Civil Procedure."  *Id.*

19         Here, FL's application seeks issuance of a subpoena for documents and ESI.  The proposed

20    subpoena attached to the application makes repeated reference to the procedures for the production

21    of such materials under Federal Rule of Civil Procedure 45.  [Dkt. 3-1 at 18-20].  Accordingly, the

22    Court determines that the discovery authorized herein shall be taken and produced in accordance

23    with the Federal Rules of Civil Procedure, and in particular, Rule 45.

24         The Parties have identified a dispute concerning how much time Sony should be given to

25    respond to and produce documents responsive to the subpoena.  Under Rule 45, any objection to a

26    subpoena "must be served before the earlier of the time specified for compliance or 14 days after

27    the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  Without setting a brightline rule for the

28    compliance date, Rule 45 requires that a person commanded to produce documents or ESI be

United States District Court
Northern District of California

14

given "reasonable time to comply" with the subpoena.  Fed. R. Civ. P. 45(d)(3)(A)(i) ("On timely motion, the court . . . must quash or modify a subpoena that . . . fails to allow a reasonable time to comply[.]").  Because each subpoena will necessarily differ in scope and breadth, and each case is dependent on the facts specific to that case, Rule 45 does not define numerically what length of time is reasonable.  Rather, "reasonableness seems to be related to the extent of the materials requested and the other underlying circumstances of the particular case."  9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3rd ed. 2023).  The Court has considerable flexibility and discretion to determine what constitutes a "reasonable" compliance date.  *Id.*  Many courts have found fourteen days from the date of service of the subpoena to be presumptively reasonable in light of the language of Rule 45(d)(3)(A)(i).  *See, e.g.*, *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. MISC 08-347 (ARR) (MDG), 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010) (collecting cases).

Here, FL asks that Sony be given ten days from the date of the order approving the *ex parte* application to either comply with or bring a motion challenging the subpoena, stressing that Sony has already had "over sixty days to analyze the subpoena."  [Dkt. 21 at 4].  Sony, in response, asks that it be given thirty days from the date of such order to file a motion to quash "or bring any other motion it deems necessary in response to the subpoena."  [Dkt. 22 at 3].

Sony was served with a copy of FL's proposed subpoena on July 12, 2023.  *See* Dkt. 7. The Court ordered the Parties to meet and confer regarding the proposed subpoena, and the Parties undertook those discussions until September 2023.  *See* Dkts. 21-22.  Given that Sony therefore had nearly three months to review the specific requests in the subpoena and has had ample opportunity to discuss the scope of the subpoena with FL, and further in light of the presumptive fourteen-day time period in Rule 45, the Court concludes that a fourteen-day compliance period is reasonable in this case.

Further, the Court is cognizant that at least some of the materials sought by the subpoena may be considered confidential business information.  Therefore, the Parties and their counsel are reminded to fully comply with Section C of the Court's Discovery Standing Order regarding

issuance of a Protective Order, including discussing whether to simply adopt the Court's model Protective Order for expedience and convenience.  The Court is willing to consider a proposed Protective Order to prevent unauthorized use of any confidential or trade secret information.  The Parties are hereby **ORDERED** to meet and confer promptly to discuss whether a Protective Order is required in this case, and to submit a proposed Protective Order pursuant to the procedures in Section C of the Court's Discovery Standing Order no later than ten (10) days from service of the subpoena on Sony.

Similarly, the proposed subpoena seeks certain ESI from Sony.  Therefore, the Parties and their counsel are reminded to fully comply with Section F of the Court's Discovery Standing Order regarding issuance of an ESI Order, including whether to simply adopt the Court's model Stipulated Order regarding ESI for expedience and convenience.  Alternatively, the Parties may at their option resolve and agree on an ESI protocol by private agreement without need for a Court Order.  The Parties are hereby **ORDERED** to meet and confer promptly to discuss whether an ESI protocol or order is required in this case, and to submit a proposed ESI Order (if needed) pursuant to the procedures in Section F of the Court's Discovery Standing Order no later than ten (10) days from service of the subpoena on Sony.

## CONCLUSION

Having considered all relevant factors and legal requirements, the Court finds that, in its discretion, granting FL's § 1782 application is appropriate in this case.

Accordingly, **IT IS ORDERED THAT**:

1. FL's application [Dkt. 3] is **GRANTED without prejudice** as to any argument or objection that may be asserted in either a motion to compel or a motion to quash or modify filed timely after issuance of the subpoena, following the Court's Discovery Standing Order Section H regarding handling of discovery disputes.

2. FL's previously filed application [Dkt. 1], which is entirely identical and duplicative of the instant application [Dkt. 3], is **DENIED as moot**.

3. FL is authorized to serve upon Sony a subpoena substantially in the form annexed as Exhibit A to FL's application [Dkt. 3-1 at 18-28].  Said subpoena shall comply with the

United States District Court
Northern District of California

United States District Court
Northern District of California

requirements set forth in Federal Rule of Civil Procedure 45, including the geographic limits on location for production of documents in response thereto, and all other conditions as set forth herein.  Service of that subpoena shall be completed within **five (5) calendar days** of this Order.  When serving the subpoena, FL shall attach to the subpoena a copy of this Order.

4.  The Parties are hereby **ORDERED** to meet and confer promptly to discuss whether a Protective Order is required in this case, and to file with the Court a proposed Protective Order pursuant to the procedures in Section C of the Court's Discovery Standing Order no later than ten (10) days from service of the subpoena on Sony.  The Parties are hereby **ORDERED** to meet and confer promptly to discuss whether an ESI protocol or order is required in this case, and to submit a proposed ESI Order (if needed) pursuant to the procedures in Section F of the Court's Discovery Standing Order no later than ten (10) days from service of the subpoena on Sony.

5.  Sony shall have **fourteen (14) calendar days** from the date of service of the subpoena to (a) serve a written response and objections (if any) to the subpoena, (b) produce those documents, materials, ESI and other things responsive to the subpoena within its possession, custody, or control which Sony has no objection to producing and which can be collected and produced using reasonably prompt diligence (which presumably Sony has already started, knowing of the subpoena for over three months), and (c) confirm in writing the date (no later than thirty (30) days after service of the subpoena) by which Sony will complete substantially all production of documents, materials, and ESI responsive to the subpoena.

6.  If Sony asserts objections to the subpoena, the Parties shall promptly meet and confer to attempt to resolve those objections.  With regard to any such dispute concerning the subpoena, should one arise, counsel for FL and Sony shall review, be familiar with, and follow this Court's procedures for resolving discovery disputes as set forth in the undersigned's Standing Order for Discovery available on the Northern District of California's website.  If a motion (whether styled as a motion to compel, a motion to

quash/modify, or otherwise) is required to adjudicate any remaining disputes between the Parties, any such motion shall be filed by joint letter brief no later than forty-five (45) days after issuance of the subpoena.  The filing of any motion shall not be relied upon as a basis to delay or refuse otherwise unobjected production of documents, ESI, or other material.

7.  If, after notice is provided and after the deadlines set forth herein have passed, neither Party files any motion regarding any disputes concerning the subpoena or compliance with the subpoena, Sony shall complete production (pursuant to Rule 45) of the requested documents and ESI, along with a notarized verification signed under penalty of perjury, to counsel for FL.

8.  Within **five (5) calendar days** after Sony has produced the requested documents and information in compliance with the subpoena, the Parties shall file a joint status report, advising the Court as to the status of this case and whether any further issues relating to the subpoena remain pending.

**IT IS SO ORDERED.**

Dated: October 6, 2023.

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

18